# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARIO WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06 C 157** |
| | ) | |
| | ) | |
| **CITY OF CHICAGO et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Mario Williams' ("Williams") motion for summary judgment, Defendants' motion for summary judgment, and Williams' motion to strike. For the reasons stated below, we grant Defendants' motion for summary judgment in its entirety, deny Williams' motion for summary judgment in its entirety, and deny Williams' motion to strike.

## BACKGROUND

Williams alleges that on February 15, 2005, at around 2:00 a.m., Defendant Officer Rodriguez ("Rodriguez"), a police officer for Defendant City of Chicago ("City"), observed Williams in his parked truck in a traffic lane with his brother on

1

Lake Shore Drive in Chicago, Illinois. Williams alleges that Rodriguez made a traffic stop, performed a sobriety test on Williams, and then arrested Williams for obstruction of traffic and driving under the influence. Williams also claims that he suffers from asthma and that Rodriguez refused to provide Williams with his inhaler for his asthma at the scene of the arrest or during his detention at the police station. According to Williams, while he was confined he also asked an unknown officer ("Unknown Officer") for his inhaler. Williams contends that neither Rodriguez nor the Unknown Officer provided him with his inhaler until after he had already been confined for hours.

Williams brought the instant action and includes in his complaint a claim brought against Rodriguez alleging a false arrest in violation of 42 U.S.C. § 1983 ("Section 1983") (Count I), a Section 1983 deliberate indifference claim brought against Rodriguez and the Unknown Officer (Count II), an Illinois state law denial of medical treatment claim brought against all Defendants (Count III), and a malicious prosecution claim brought against Rodriguez and the City (Count IV). Williams and Defendants have filed motions for summary judgment and Williams has moved to strike Defendants' memorandum in support of their motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c).  In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325.  Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).  When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American*

*Home Assurance Co.,* 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

I. Motion to Strike

Williams argues that Defendants failed to comply with Local Rule 56.1 and that the court should thus strike Defendants' memorandum of law in support of their motion for summary judgment ("Memorandum") or in the alternative grant Williams' motion for summary judgment. Williams argues that Defendants improperly incorporated by reference their statement of material facts into the Memorandum ("Reference") and Defendants failed to include a recitation of the facts of this case in the Memorandum. Williams argues that the Reference allowed Defendants to circumvent the fifteen page limit for briefs and include additional arguments. Defendants state in the Memorandum that "[t]he statement of facts is found in Defendants' Local Rule 56.1(a)(3) Statement of Uncontested Facts." (Mem. DSJ 1). Defendants did not explicitly incorporate the statement of facts into the Memorandum and Williams has not cited any rule or precedent that bars a movant from notifying the court that the facts of the case are included in the Local Rule 56.1 statement of material facts.

Williams also contends that under Local Rule 56.1, a party "has an obligation to recite its version of facts in its supporting memorandum . . . ." (Mot. Str. 2). However, Local Rule 56.1 addresses the parties' statements of facts and responses and contains no such requirement in regards to memorandums of law. A party is not

required by Local Rules to include a facts section in a memorandum of law and Williams has not cited any controlling precedent that requires such a section. A party is free to provide a fact section in its memorandum of law, and such a section might improve the clarity of that party's positions and arguments, but no such factual section is required. Therefore, we deny Williams' motion to strike.

## II. False Arrest Claim (Count I)

Defendants argue that Rodriguez had probable cause to perform the traffic stop, perform a sobriety test and to arrest Williams. The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. In reviewing a Fourth Amendment claim, the "touchstone" for the "inquiry is reasonableness, . . . a standard measured in light of the totality of the circumstances and determined by balancing the degree to which a challenged action intrudes on an individual's privacy and the degree to which the action promotes a legitimate government interest." *Green v. Butler,* 420 F.3d 689, 694-95 (7th Cir. 2005). An arrest is not constitutional unless the arresting officer has probable cause. *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004); *Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir. 1990)(stating that "[r]egardless of the defendant's motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious

prosecution").  An officer has probable cause "if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime."  *Lawrence*, 391 F.3d at 842 (quoting *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002)).

A. Initiation of Traffic Stop

Defendants contend that Rodriguez had probable cause to make the traffic stop.  Williams claims that on the night in question he was driving a truck on Lake Shore Drive in Chicago, Illinois and his brother was a passenger in the back seat of the truck.  (R DSF Par. 7).  Williams also claims that he was having asthma problems and he decided to pull the truck over on Lake Shore Drive in order to let his brother drive.  Williams admits, pursuant to Local Rule 56.1, that he "stopped his vehicle in the far right lane of southbound Lake Shore Drive, between Monroe and Jackson, approximately six or seven car lengths away from the streetlight at Jackson, and put his hazard lights on."  ( R DSF Par. 9).  Williams also admits that he drew a diagram that accurately reflects the location of his truck, which is attached to Defendants' statement of material facts as Exhibit 4, and which shows that his truck was parked in a traffic lane.  (R DSF Par. 10).  Williams also admits that he parked the truck for more than an instant, indicating that before Rodriguez pulled up Williams had been parked there for "two to five minutes."  (W. Dep. 97)(R DSF Par. 12).  Williams also admits that when Rodriguez approached the scene Rodriguez saw two other vehicles that had pulled up behind Williams' truck.  (R DSAF Par. 1).  Thus, the undisputed

evidence shows that when Rodriguez approached the scene, he saw a truck stopped in a traffic lane on Lake Shore Drive and that the vehicle remained stationary for more than an instant, and in fact appeared to be parked.

Williams contends that when he parked the truck it was late at night and "there was little traffic," (Mem. WSJ 3), and that he therefore did not violate 625 ILCS 5/11-1301 ("Section 5/11-1301") which provides the following:

> § 11-1301. Stopping, standing or parking outside of business or residence district. (a) Outside a business or residence district, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or so leave such vehicle off the roadway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway.

625 ILCS 5/11-1301(a). There is no mention in Section 5/11-1301 that indicates a driver can park on a roadway if the driver deems the traffic flow to be light. Section 5/11-1301 also provides that a driver should not park "upon the roadway when it is practicable to stop, park or so leave such vehicle off the roadway . . . ." *Id.* Williams claims that he stopped because he was having difficulty with his asthma condition and in response to Defendants' statement of facts he contends that it "was an emergency." (R DSF Par. 11). However, there are no facts that would indicate that his condition was such that he could not have sought a proper area to park his vehicle before switching drivers. Williams acknowledges that he was not incapacitated mentally or physically, admitting that he "stopped his vehicle with the intention of switching drivers" and that "[h]e intended to exit the vehicle first, in order to allow

his brother to move from the back seat into the driver's seat." (R SF Par. 11). Also, while Williams' drawing of Lake Shore Drive does not indicate that there was a place to pull over alongside of the road, Williams admits that he parked his truck "approximately six or seven car lengths away from the streetlight at Jackson . . . ." (R DSF Par. 9). Thus, the undisputed evidence shows that Williams could have exited Lake Shore Drive and/or proceeded further on Lake Shore Drive and sought somewhere to legally park rather than parking in a moving traffic lane. Although the parties agree that Williams told Rodriguez at the scene of the arrest that he "was not feeling well," there is no evidence Williams' asthma condition affected him to the extent that he could not have legally parked his vehicle and that he needed to stop in a moving traffic lane.

In addition, whether Williams actually violated Section 5/11-1301 or whether Rodriguez cited the proper statute in his ticket is not determinative for a probable cause analysis. Williams contends that the issue of whether he violated traffic laws "is hotly disputed and thus, not amenable to a summary judgment." (Ans. DSJ 1). However, as is indicated above, the standard for a probable cause determination is not whether the arresting officer's beliefs and conduct turns out to be correct, but rather whether a reasonable arresting officer would have had such a belief and acted accordingly. *Lawrence,* 391 F.3d at 842. Regardless of whether there was little traffic when Williams pulled over or whether Williams technically violated Section 5/11-1301, the undisputed facts show that Rodriguez saw a truck parked on Lake Shore Drive in a lane designated for moving traffic. That observation alone would

8

have provided Rodriguez with justification to investigate the situation in order to protect the safety of those in the truck and persons in vehicles that might pass by the location where the truck was parked. Finally, we note that Williams even admits in his memorandum in support of his motion for summary judgment that the traffic "stop might have been valid." (Mem. WSJ 6). Thus, based upon the undisputed evidence, no reasonable trier of fact could conclude other than that Rodriguez had probable cause to perform a traffic stop when he discovered Williams' truck parked on Lake Shore Drive.

### B. Observations of Rodriguez When he Approached Vehicle

Williams argues that Rodriguez lacked probable cause to conclude that he should administer a sobriety test. However, Williams admits to certain facts that show that Rodriguez made observations that indicated that Williams was intoxicated. Williams admits that "[i]f an officer believes an individual is impaired, the next step is to offer them a field sobriety test." (R DSF Par. 17). Defendants contend in statement of material facts paragraph number 14 ("Paragraph 14") that when Rodriguez approached the truck he "detected a strong odor of alcohol on plaintiff's breath and saw that his eyes were bloodshot." (DSF Par. 14). Williams' only response to Paragraph 14 is that he "had not been drinking" and Williams provides no response to the facts concerning the odor in the truck and the condition of Williams' eyes. (R DSF Par. 14). Since Williams did not deny the accuracy of Rodriguez's observations listed in Paragraph 14 and instead provided an evasive

response to the statement of material fact, the fact is deemed admitted pursuant to Local Rule 56.1. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating "that a district court is entitled to expect strict compliance with Rule 56.1" and that "[s]ubstantial compliance is not strict compliance"); LR 56.1; *Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). Williams also expressly admits in response to Defendants' statement of material facts paragraph number 15 that "his eyes were red and bloodshot," but argues that his "eyes were always red as a side effect of his asthma." (R DSF Par. 15).

In regards to the determination of whether Rodriguez had probable cause, the court must determine whether a reasonable officer would have believed that Williams had been drinking alcohol. *Lawrence,* 391 F.3d at 842. Williams contends that, although Williams or his truck smelled like alcohol, he "had not been drinking" and that his eyes were bloodshot because his asthma made his eyes red. However, Williams' explanations do not negate the fact that the observations made by Rodriguez would have been sufficient for a reasonable officer to conclude that Williams had been drinking alcohol and might be intoxicated. The undisputed facts also indicate that Rodriguez asked Williams if he had been drinking and Williams "said no." (R DSF Par. 13). However, from a reasonable officer's point of view in Rodriguez's position, such a denial could have been made by an intoxicated individual that desired to avoid an arrest.

Williams also argues that Rodriguez did not smell alcohol because "there was none in the vehicle" and that Rodriguez did not observe Williams' vehicle "driving erratically." (Mem. WSJ 2). Such arguments, however, are red herrings. Rodriguez could easily have noticed the smell of alcohol in the truck regardless of whether there was a container in the truck. The smell could have come from Williams' breath or clothing. Also, the fact that Rodriguez did not observe Williams driving erratically is due to the undisputed fact that Rodriguez first observed the truck after it had been parked for several minutes and thus never saw the vehicle in motion. (R DSF Par. 12)(R DSAF Par.1).

Williams also argues that the officer on duty at the police station lockup "reported that the Plaintiff did not smell like alcohol." (Mem. WSJ 2). However, the only evidence cited by Williams in support of that statement is the report prepared by the lockup officer. (WSF Par. 30). Defendants admit, pursuant to Local Rule 56.1, that the statement is accurate. (R WSF Par. 30). However, we note that the report only included preprinted observations regarding whether the inmate appeared to be under the influence of alcohol. There is no preprinted box concerning odors and there is no statement written by the lockup officer affirmatively stating that he did not smell alcohol on the person of Williams. Also, the observations of the lockup officer do not change the fact that Williams has admitted, pursuant to Local Rule 56.1, that Rodriguez smelled alcohol when he approached the truck. Finally, it is possible that the smell of alcohol present at the arrest scene, whether it came from Williams' breath or his clothing, could have dissipated by the time that Williams was

11

placed in lockup at the police station. Thus, based upon the above undisputed facts, no reasonable trier of fact could conclude other than that Rodriguez had sufficient justification to administer the sobriety test on Williams.

C. Sobriety Test

Williams argues that his "performance on the field sobriety tests . . . was substantially successfully completed" and that Rodriguez thus did not have reason to conclude that Williams was driving under the influence. (Ans. DSJ 6). Thus, Williams admits in his answer that at best he only "substantially successfully completed" the sobriety test and could not perform all the necessary actions for the test. (Ans. DSJ 6). Also, Williams makes other admissions that show that Rodriguez was justified in concluding that Williams was intoxicated based upon Williams' performance on the sobriety test. Williams admits that a "[f]ield sobriety test includes a finger-to-nose test, one-leg stand test, and the walk-and-turn test." (R DSF Par. 17). Defendants assert in statement of material facts paragraph number 25 ("Paragraph 25") that Rodriguez "saw plaintiff sway from side to side while performing the finger-to-nose test," that "[w]hile performing the walk-and-turn test, plaintiff failed to touch his heel to toe several times, forward and back," and that Williams "had to stop and steady himself twice, stepping off the line four times." (DSF Par. 25). Williams denies the veracity of Paragraph 25 and contends that although Rodriguez testified as such at his deposition, Rodriguez testified in a contrary manner at the criminal trial. (R DSF Par. 25). Specifically, Williams

12

contends that at trial Rodriguez testified that he did not observe Williams swaying. (R DSF Par. 25).

The only evidence cited by Williams in support of his denial of Paragraph 25 is page 43 of the trial transcript that indicates that Rodriguez stated he did not "observe swaying." (R DSF Par. 25);(W. Ex. 3 43). Williams, however, takes that statement by Rodriguez out of context. The statement by Rodriguez at trial that he did not observe Williams swaying was solely made in regard to the walk-and-turn test and thus, pursuant to Local Rule 56.1, in the absence of a citation to evidence to support a denial, it is deemed as undisputed that Williams admits to swaying during the finger-to-nose test as is provided in Paragraph 25. LR 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003)(stating that "[a] denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence"). (W. Ex. 3 43). Also, a close examination of Rodriguez's trial testimony transcript, which is cited by Williams, shows that his testimony was entirely consistent with the facts included in Paragraph 25. For example, Rodriguez testified that during the finger-to-nose test Williams "swayed from side to side." (W. Ex. 3 41). Rodriguez also testified that Williams was unable to successfully perform the one leg-stand test and that he had to repeatedly "stop and steady himself" during the walk-and-turn test. (W. Ex. 3 43). Rodriguez also testified that Williams missed touching his heal to his toes three times. (W. Ex. 3 43). Thus, Williams has failed to point to any evidence that shows that he was able to perform the necessary actions in order to pass the sobriety test,

and in fact the evidence cited by Williams corroborates Defendants' contention that Williams failed to pass the sobriety test.

Thus, the undisputed facts show that Rodriguez came upon a parked truck in a traffic lane on Lake Shore Drive. The undisputed facts also show that when Rodriguez approached the truck he smelled the odor of alcohol and that Williams' eyes were bloodshot. Finally, the undisputed evidence shows that Williams failed to successfully complete the sobriety test. Based upon such facts, no reasonable trier of fact could conclude other than that Rodriguez justifiably believed that Williams was unlawfully intoxicated and that Rodriguez had probable cause to arrest Williams. Therefore, we grant Defendants' motion for summary judgment on the false arrest claim (Count I) and deny Williams' motion for summary judgment on that claim.


III. Deliberate Indifference Section 1983 Claim (Count II)

Defendants argue that Williams cannot prevail on the deliberate indifference Section 1983 claim (Count II) because Williams has not shown that he suffered any harm that was objectively serious. The protections of the Eighth Amendment do not apply to pretrial detainees, but "the Due Process Clause of the Fourteenth Amendment protects pretrial detainees under the same standard as the Eighth Amendment." *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000); *see also Fisher v. Lovejoy*, 414 F.3d 659, 662 n.1 (7th Cir. 2005)(stating that "in cases involving pre-trial detainees, [the Court] commonly consult[s] the 'analogous standards of Eighth Amendment jurisprudence'")(quoting in part *Jackson v. Ill.*

*Medi-Car, Inc.,* 300 F.3d 760, 764 (7th Cir. 2002)). Under the Eighth Amendment standard, a plaintiff is required to establish that: "(1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to h[is] health or safety." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *see also Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir.1996)(stating that "a prison official may evidence deliberate indifference by failing to treat or delaying the treatment of a serious medical need" but that "for liability to exist the medical need must be objectively serious"). A medical need that signifies serious harm to a plaintiff is defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)(quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997)).

In the instant action, there is ample evidence that shows that Williams was not subjected to a serious risk of harm in regards to his asthma condition. Williams admits that when Rodriguez approached the truck Williams told Rodriguez that he was "not feeling well." (R DSF Par. 18). Defendants assert in statement of material facts paragraph number 27 ("Paragraph 27") that Williams "did not tell officer Rodriguez he was having an asthma attack or having asthmatic problems before or during the field sobriety tests." (DSF Par. 27). Williams denies the facts included in Paragraph 27, but in support of his denial he cites page 103 of his deposition transcript. (R DSF Par. 27). However, on that page of the transcript Williams testified at his deposition only that he said he "wasn't feeling well." (W. Dep. 103).

Williams also cites page 33 of his brother's deposition transcript and argues that "when Rodriguez asked Williams to exit the vehicle, Williams explained to Rodriguez that he was in need of his asthma medication, as the cold February air causes this asthma to flare-up."  (R DSF Par. 27).  However, the conversation referred to by Williams that was mentioned in his brother's deposition was a conversation between Williams and his brother.  (MW Dep. 33).  In fact, Williams' brother also admitted that he "never heard [Williams] ask [Rodriguez] for his [medical] spray."  (MM Dep. 33).  Thus, in the absence of a citation by Williams to evidence that contradicts Defendants' contention that Williams "did not tell officer Rodriguez he was having an asthma attack or having asthmatic problems before or during the field sobriety tests," the facts are deemed undisputed pursuant to Local Rule 56.1.  (DSF Par. 27).   Williams also fails to cite to any evidence that would contradict Defendants' contention that at the time of the sobriety test Williams never told Rodriguez that "he needed medical attention or medication" and, thus, such facts are deemed undisputed pursuant to Local Rule 56.1.  (R DSF Par. 28).  The undisputed fact that Williams never mentioned to Rodriguez at the arrest scene that he was having trouble with his asthma or informed Rodriguez that he needed medication or immediate medical assistance is evidence that indicates that Williams was in fact not suffering significantly from any asthma related symptoms that represented a serious threat of harm to Williams.  Williams also admits that he was able to exit his truck and engage in conversations with Rodriguez, which is further evidence that Williams was not suffering from any serious breathing difficulties at

that juncture.  (R DSF Par. 18, 19, 21).  Williams fails to point to any evidence that would indicate that he was subjected to a serious risk of harm at the arrest scene.

There is also no evidence to indicate that Williams was suffering from a serious medical condition while detained at the police station.  Williams admits that prior to being asked to take the Breathalyzer test at the police station he never told Rodriguez "or anybody else that [he was] having difficulty breathing or had asthma problems . . . ."  (W. Dep. 122).  Williams admits that when Rodriguez asked Williams to take the Breathalyzer test Williams did not tell him that he "wanted to see a doctor."  (W. Dep. 130).  Williams also testified at his deposition that during his confinement he never told "anybody that [he] wanted to go to the hospital."  (W. Dep. 131).   Williams also testified that he tried to call the "turnkey" so that he could inform him about his inhaler, but other than that alleged effort, Williams never told "anybody that [he] needed medical attention."  (W. Dep. 131).  If Williams had been in dire need of medical attention, as he now contends, he clearly would have told any available officer of his need.  The fact that he admittedly did not do so shows that he was not in need of such medical attention.

Williams also acknowledges that while he was confined in his cell, he "was hollering for someone to bring him his inhaler for hours" and that "[h]e was also knocking on the window and walls of the cell."  (R DSF Par. 44).  Such continuous verbalization and physical conduct is not consistent with Williams' assertion that he was having trouble breathing due to his asthma.  Williams also concedes that he was eventually provided with his inhaler during his confinement.  (R. DSF Par. 45).

Williams points out that he sought medical treatment for his asthma condition after his detention. However, Williams admits that he did not seek medical treatment for his asthma until the day after being released and that it was not the first time that he had sought such medical attention. (R DSF Par 47, 51). There is insufficient evidence that would show that Williams' asthma condition caused him to face a serious medical harm during his arrest or confinement. Williams concedes that the officers at the police station possessed his inhaler and there is no evidence that indicates that if Williams had in fact started having serious breathing difficulties that Rodriguez, the Unknown Officer, or some other officer would not have provided Williams with his inhaler.

Williams cites *Board v. Farnham*, 394 F.3d 469 (7th Cir. 2005) in support of his assertion that he was suffering from a serious medical condition when he was arrested and confined. (Mem. WSJ 8). In *Farnham*, the Court recognized that asthma could constitute a serious medical condition that would support a deliberate indifference claim. *Id.* at 484. However, the Court in *Farnham* did not state that asthma is always considered a serious medical condition, but rather concluded that asthma "can be, and frequently is, a serious medical condition, *depending on the severity of the attacks*." *Id.* (emphasis added). In the instant action, unlike in *Farnham*, there are not sufficient facts that showed that Williams was suffering from a severe asthma attack, or for that matter from any asthma attack, during his arrest or confinement. In *Farnham*, the Court noted that, according to the plaintiff, the defendant's conduct "exacerbated [the plaintiff's] asthma causing him to be taken to

18

the emergency room on two separate occasions for his asthma-related problems." *Id.*

The plaintiff in *Farnham* also contended that "his condition worsened resulting in severe breathing difficulties that forced him to begin using a breathing machine for the first time in his life" and that "on a number of occasions he was denied the use of his inhaler and that the deprivation of the inhaler nearly killed him." *Id.* In contrast, in the instant action, Williams had ample opportunity to request medical attention during his arrest and detention and never did so. Williams has not pointed to any evidence that shows he exhibited symptoms of severe breathing difficulties during his confinement. Williams admits that he did not even seek medical attention when he was released and neglected to seek medical attention until the next day. Finally, there is no evidence that Williams faced a risk of any asthma related harm because there is no evidence that shows that the officers would not have provided Williams with his inhaler if he had an asthma attack. Thus, the instant action is distinguishable from *Farnham*. Finally, we note that Williams has not presented any expert report or verified medical evidence to show the harm to his health that allegedly resulted from the temporary deprivation of his inhaler. *See Langston*, 100 F.3d at 1240 (stating that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed")(quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995))(emphasis in original). Based on the above, no reasonable trier of fact could conclude other than that no harm was caused to Williams during his arrest or confinement that was objectively

serious.  Therefore, we grant Defendants' motion for summary judgment on the Section 1983 deliberate indifference claim (Count II) and deny Williams' motion for summary judgment on that claim.


## IV. State Denial of Medical Treatment Claim (Count III)

Williams contends that Defendants denied him necessary medical treatment in violation of Illinois law.  As is explained above, the undisputed evidence shows that Williams failed to request a doctor or medical care or ask to be taken to a hospital during his arrest or confinement despite having ample opportunity to do so.  There is an absence of evidence that shows Williams exhibited symptoms relating to severe breathing difficulties.  To the contrary, there is other evidence that would be indicative that Williams did not exhibit severe asthma symptoms.  There is evidence that shows that Williams' inhaler was at the police station and there is an absence of evidence that would indicate that Williams would not have been provided with his inhaler if he in fact had an asthma attack.  Finally, the evidence shows that Williams failed to even mention his inhaler to Rodriguez until well into Williams' confinement.  Thus, the undisputed evidence clearly shows that Defendants did not deny Williams necessary medical treatment.

Williams and Defendants also agree that the standard applied for Williams' state law denial of medical treatment claim is the same standard applied to his Section 1983 deliberate indifference claim.  (Mem. DSJ 12);(Ans. DSJ 14); *Regalado v. City of Chicago*, 40 F.Supp.2d 1009, 1012 (N.D. Ill. 1999).  Since the

undisputed evidence shows that Williams cannot prevail upon his Section 1983 deliberate indifference claim, he cannot prevail on his state law denial of medical treatment claim as well. Therefore, we grant Defendants' motion for summary judgment on the state law denial of medical treatment claim (Count III) and deny Williams' motion for summary judgment on that claim.

## V. Malicious Prosecution Claim (Count IV)

Williams contends that after the arrest, Rodriguez maliciously prosecuted the criminal charges brought against Williams. Under Illinois law, for a malicious prosecution claim, a plaintiff must establish: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Joiner v. Benton Community Bank*, 411 N.E.2d 229, 232 (Ill. 1980)(quoting *Ritchey v. Maksin*, 376 N.E.2d 991, 993 (1978)). As is explained above, the undisputed evidence shows that no reasonable trier of fact could conclude other than that Rodriguez had probable cause to charge and arrest Williams. Williams concedes that if Rodriguez had probable cause to charge and arrest Williams, Williams then could not prevail upon his malicious prosecution claim. (Ans. DSJ 14-15). We also note that there is an absence of evidence that shows that Rodriguez had any malice towards Williams which would prevent Williams from prevailing on his malicious prosecution claim. Therefore, we grant Defendants'

motion for summary judgment on the malicious prosecution claim (Count IV) and deny Williams' motion for summary judgment on that claim.

VI. Qualified Immunity

Defendants argue that Rodriguez is protected by qualified immunity. A government official is protected from civil monetary liability by qualified immunity when performing official discretionary functions if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Siebert v. Severino,* 256 F.3d 648, 654 (7th Cir. 2001)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)). Qualified immunity does not apply to a situation in which "the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional." *Id.*

In the instant action, as is explained above, the undisputed evidence clearly shows that Rodriguez had probable cause to conduct the traffic stop, sobriety test, and to arrest Rodriguez. In addition, the undisputed evidence clearly shows that Williams never appeared to be suffering from any serious medical condition during the arrest or his confinement, and that Williams never informed Rodriguez in a timely fashion of any medical problems. Although Williams told Rodriguez during the arrest that he was not feeling well and Williams attempted to avoid taking the Breathalyzer test during his confinement, such conduct was consistent with an individual who was intoxicated and attempting to avoid detection by the police.

Thus, a reasonable officer in Rodriguez's position could not have concluded that he was violating any of Williams' constitutional rights, and to the extent that Williams could have prevailed on any of his claims in the instant action, such claims would be barred by Rodriguez's qualified immunity.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety, deny Williams' motion for summary judgment in its entirety, and deny Williams' motion to strike. We also conclude that the claims in this action are barred by Rodriguez's qualified immunity.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   November 21, 2006